DENNIS R. BIRUK, AN INFANT BY HIS GUARDIAN *AD LITEM*, GEORGE BIRUK, AND GEORGE BIRUK, INDIVIDUALLY, PLAINTIFF-RESPONDENT, v. WILLIAM WILSON, DEFENDANT-APPELLANT.

UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 6, 1970—Decided April 10, 1970.

Before Judges GOLDMANN, LEWIS and MATTHEWS.

*Mr. John J. Ronca* argued the cause for appellants (*Messrs. Oppenheim & Oppenheim,* attorneys).

*Mr. Nathan Rosenhouse* argued the cause for respondents (*Messrs. Rosenhouse, Cutler & Zuckerman,* attorneys).

The opinion of the court was delivered by

GOLDMANN, P. J. A. D. The Unsatisfied Claim and Judgment Fund (Fund) appeals from a Law Division order directing it to pay plaintiff Dennis R. Biruk $8,000 and his father George Biruk $3,200 — $2,000 on his *per quod* claim, thus exhausting the $10,000 statutory maximum for injuries to a single individual, and $1,200 for property damage.

This action is the result of a head-on collision between an automobile driven by Dennis Biruk and owned by his father, and an automobile driven by Wilson and owned by his uncle Stone. The Stone car was uninsured. Two passengers in the car driven by Wilson and the passenger in the car driven by Biruk sued Wilson, Stone and the Biruks. The Biruks sued Wilson and Stone. In a consolidated trial the jury determined that Wilson and Dennis Biruk were negligent and awarded damages totalling $69,967. On appeal by the Biruks, this court affirmed *per curiam.* The Supreme Court unanimously reversed and remanded the cases for a new trial. 50 *N. J.* 253 (1967).

The insurance carrier for the Biruks settled the claims of the passengers for an amount exceeding $20,000. The Fund

did not participate in the settlements and has to date paid nothing to any claimant.

Upon retrial the jury awarded Dennis Biruk $8,000 and George Biruk $4,500. Plaintiffs then moved for payment out of the Fund. The trial judge ordered the Fund to pay Dennis $8,000 and his father $3,200, and this appeal followed.

The Fund concedes that plaintiffs have complied with all provisions of the Unsatisfied Claim and Judgment Fund Law, *N. J. S. A.* 39:6–61 *et seq.,* and are qualified judgment creditors thereunder. The only question raised by the Fund on this appeal is whether it is entitled to credit for sums paid the passengers in settlement of their claims by plaintiffs' insurance carrier. The Fund insists that under *N. J. S. A.* 39:6–69, 70(m), 71 and 73 its exposure in a multiple-claimant situation is limited to $20,000 for one accident, and therefore it need not pay anything to plaintiffs. This is so extraordinary a contention as to amount to a perversion of the statute.

The passengers discontinued their actions after settlement and never became holders of a judgment. Nor have they ever applied for payment out of the Fund under *N. J. S. A.* 39:6–69, which deals with qualified holders of valid judgments who apply for payment out of the Fund and which contains the monetary limit of $20,000 for injuries suffered by more than one person in any one accident. Plaintiffs are the only persons in this action who meet that description. They have had recourse to no party other than the Fund and have never received payment from any source whatever. Of course, the passengers who received settlements from plaintiffs' insurer never became applicants under the Unsatisfied Claim and Judgment Fund Law.

*Dodd v. Copeland,* 99 *N. J. Super.* 481 (App. Div. 1968), aff'd 52 *N. J.* 537 (1968) and *Garcia v. Morales,* 47 *N. J.* 269 (1966), on which the Fund relies, are wholly inapposite. It is well to remember the teaching of *Robson v. Rodriguez,* 26 *N. J.* 517 (1968):

The Unsatisfied Claim and Judgment Fund Law is remedial legislation that was enacted as a result of concern over the economic hardship imposed upon persons who sustain personal injuries or property damage, or both, caused by financially irresponsible and uninsured motorists, where the claimants have no other source of compensation. *Dixon v. Gassert*, 26 *N. J.* 1 (1958). Its primary purpose is to mitigate this evil which springs in the main from the negligent operation of motor vehicles by uninsured persons. * * * [at 524–525]

The position taken by the Fund is so tortured as to prevent fulfillment of this legislative policy and would result in an unconscionable miscarriage of justice. What the Fund seeks, in effect, is to penalize plaintiffs because their own insurance company saw fit to promote the public policy favoring the resolution of claims by way of settlement.

The order is affirmed.